UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JIMMY ROY CARRION VERA,<br><br>               Petitioner,<br>   v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>               Respondents. | CASE NO. 2:26-cv-01617-DGE<br><br>ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |

This matter comes before the Court on Petitioner Jimmy Roy Carrion Vera's petition for writ of habeas corpus.  (Dkt. No. 1.)  Having considered the petition, the return memorandum (Dkt. No. 4), the reply (Dkt. No. 7), and all supporting material, the Court GRANTS this petition.

## I.      BACKGROUND

### A.  Factual Background

Petitioner is a native and citizen of Ecuador.  (Dkt. No. 5-2 at 2.)  Petitioner entered the United States on May 2, 2024 at or near Santa Teresa, New Mexico.  (Dkt. No. 5-1 at 2.)  On

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 1

May 3, 2024, Petitioner was issued a Notice to Appear under INA § 240 charging him as a noncitizen "present in the United States who has not been admitted or paroled" who is removable under INA § 212(a)(6)(A)(i). (Dkt. No. 5-2 at 2.) Petitioner was released on his own recognizance that same day. (Dkt. No. 5-3 at 2.)

Petitioner was ostensibly required to comply with certain conditions pursuant to his release. From June 27, 2024 until January 15, 2026, Respondents allege Petitioner missed 30 biometric check-ins and one office visit. (Dkt. No. 5-4 at 3–4.) The biometric check-ins apparently involved transmitting photographs through Respondents' biometric program. (Dkt. No. 1 at 6.) Petitioner attributes his missed check-ins to confusion about a requirement that the photographs be "transmitted at a specific time of day." (*Id*.) Petitioner asserts he was told on January 8, 2026 at an in-person check-in that his failure to timely submit photographs was considered "noncompliant." (*Id*.) Petitioner explained his confusion as to biometric check-in requirements and Respondents did not prevent Petitioner from leaving the January 8, 2026 check-in. (*Id*.) Petitioner alleges he thereafter remained compliant with reporting requirements through the date of his detention. (*Id*.) However, Respondents allege one additional biometric check-in failure occurred January 15, 2026. (Dkt. No. 5-4 at 4.)

On May 4, 2026, Plaintiff reported for an in-person check-in in Tukwila, Washington. (*Id*. at 3.) Once there, "[d]uring a routine case review, ERO officers discovered that [Petitioner] ha[d] 31 ATD violations." (*Id*.) Based on these missed appointments, officials cancelled Petitioner's order of release on recognizance ("OREC") and took Petitioner into custody. (*Id*. at 4.) Petitioner has been detained at Northwest ICE Processing Center ("NWIPC") since May 4, 2026.

B. Procedural Background

Petitioner filed a petition for writ of habeas corpus on May 13, 2026.  (Dkt. No. 1.) Petitioner asserts his detention violates his due process rights under the Fifth Amendment.  (*Id*. at 7–13.)

Respondents respond Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and the *Mathews v. Eldridge*, 424 U.S. 319 (1976) factors do not require a pre-deprivation hearing in this circumstance.  (Dkt. No. 4.)

Petitioner's traverse reiterates that he was "re-detained on May 4, 2026, without prior written notice, without any opportunity to respond to the allegations against him, and without any hearing before a neutral decisionmaker."  (Dkt. No. 7 at 2.)

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States."  *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'"  *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III.   ANALYSIS

### A.  Petitioner is Not Detained Under 8 U.S.C. § 1225(b)

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 3

At the outset, Respondents argue Petitioner is subject to mandatory detention under expedited removal proceedings pursuant to 8 U.S.C. § 1225(b).  (Dkt. No. 4 at 3–5.)

Section 1225 applies to "applicants for admission" to the United States, who are defined as noncitizens "present in the United States who ha[ve] not been admitted or who arrive[] in the United States . . . ."  8 U.S.C. § 1225(a)(1).  Applicants for admission fall into two categories. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Section 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation.  On the other hand, § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1).  *Jennings*, 583 U.S. at 287.  Persons falling within § 1225(b) are subject to mandatory detention.  *See* 8 U.S.C. § 1225(b)(1)(B) *and* § 1225(b)(2)(A).  Individuals detained under § 1225 can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'"  *Jennings*, 583 U.S. at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)).

In contrast, 8 U.S.C. § 1226(a) is broader than its counterpart and is the "default rule" for noncitizens present in the United States who are arrested and placed in immigration detention. *Jennings*, 583 U.S. at 303.  Section 1226(a) permits the government to release a detainee on bond during the pendency of the detainee's removal proceedings.  *Id.*

Here, the Court finds Respondents' argument that Petitioner is detained pursuant to § 1225(b) inconsistent with the factual record.  First, Respondents made a custody determination on May 3, 2024 formally determining that Petitioner would be released "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations[.]"  (Dkt. No. 5-3 at 2.)  Respondents could have chosen to detain

Petitioner pursuant to § 1225 at that time, but used their discretion to determine Petitioner would be subjected to the provisions of § 1226 rather than § 1225.

Second, Petitioner's May 3, 2024 Notice to Appear identifies that he is a noncitizen "present in the United States who has not been admitted or paroled," not "an arriving alien." (Dkt. No. 5-2 at 2.)  Notably, the issuing officer explicitly declined to designate Petitioner as an "arriving alien," (*see id.*), which is the active language used to define the scope of § 1225(b)(2)(a) in its implementing regulation.  8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [§ 1229a] shall be detained in accordance with [§ 1225(b)].") (emphasis added); *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass 2025) (concluding "arriving alien" language synonymous with § 1225).

Third, individuals subject to § 1225 can only be released for "urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 300; 8 U.S.C. § 1182(d)(5)(A). Petitioner was released on his own recognizance with no finding the release was based on "urgent humanitarian reasons" or for "significant public benefit."  (*See* Dkt. No. 5-3 at 2.)

Fourth, Petitioner was released on his own recognizance via an order of recognizance. (*Id.*; *see also* Dkt. Nos. 5-4 at 4; 6 at 2.)  Release on recognizance is synonymous with release pursuant to § 1226.  *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase "release on recognizance" as another name for "conditional parole" under § 1226(a).").

Fifth, Petitioner was re-detained, and his release was revoked pursuant to 8 U.S.C. § 1226 upon issuance of a Warrant for Arrest.  (*See* Dkt. No. 5-5 at 2.)

Finally, Officer Soraghan makes no mention that Petitioner was taken into custody or that he remains in custody based on § 1225.  (*See* Dkt. No. 6.)  Instead, Officer Soraghan identifies Petitioner as being detained because he had a history of ATD violations.  (*Id.* at 2.)  This is the only basis identified as the reason for Petitioner's current detention.  Moreover, Respondent's cannot simply switch between § 1225 and § 1226 midway through removal proceedings.  This is because the "procedural protections thereunder . . . cannot be unilaterally abrogated without process by the Government simply 'switching tracks.'"  *Salcedo Aceros v. Kaiser*, Case No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (citation omitted); *Gutierrez v. Chestnut*, Case No. 1:25-cv-01515-DAD-AC (HC), 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025) ("As numerous courts have observed, the initial decision to pursue petitioner's detention under § 1226(a) precludes the government from later 'switch[ing] tracks' to subject him to mandatory detention under § 1225(b)(2)."); *Uzcatequi v. Brooksby*, Case No. 4:26-cv-00020-DN-PK, 2026 WL 622751, at *9 (D. Utah Mar. 5, 2026).  Respondents offer no authority supporting the power to unilaterally swap, without process, the statutory basis for releasing a noncitizen midway through pending removal proceedings.

Accordingly, the Court finds Petitioner is not subject to, nor currently being detained pursuant to, 8 U.S.C. § 1225(b).

**B.  Petitioner's Re-Detention Violated Due Process**

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings.  U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due

process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." *Mathews*, 424 U.S. at 335.

1. Private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). This Court has previously identified that an individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon a renewed detention. *See Makuey v. Scott*, No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding the petitioner "has now been

undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release).

Here, Petitioner was arrested on May 3, 2024 and released on his own recognizance on the same day. (Dkt. No. 5-4 at 4.) Upon his release, Petitioner "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025); *Makuey*, 2025 WL 3640900, at *4. Petitioner was then at liberty in the community for two years before he was re-detained. "[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe*, 787 F. Supp. 3d at 1093.

Petitioner's strong private interest in his continued liberty means the first *Mathews* factor weighs in his favor.

2. <u>Risk of erroneous deprivation of interest through procedures used</u>

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Here, the risk of an erroneous deprivation *without any hearing* is high.

To justify Petitioner's re-detention, Respondents assert Petitioner is subject to § 1225 without any support. (*See* Dkt. No. 4 at 3–5.) Such position shows a clear erroneous basis for Petitioner's detention. And importantly, courts in this district have previously held that the government violates due process when an individual is placed in removal proceedings and released on their own recognizance but is then re-detained without a pre-deprivation hearing. *See Singh v. Noem*, No. 2:26-CV-00079-DGE, 2026 WL 265670, at *5 (W.D. Wash. Feb. 2,

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 8

2026); *Bello Chacon v. Hermosillo*, No. 2:25-cv-02299-TMC, 2025 WL 3562666, at *4 (W.D. Wash. Dec. 12, 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322–1323 (W.D. Wash. 2025).

Respondents argue that because Petitioner had numerous ATD violations, he is entitled only to a *post*-deprivation hearing.  (Dkt. No. 4 at 6) (emphasis added).  Although "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate," *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents offer no basis to conclude Petitioner's circumstances presented such an urgent scenario.[1]  All that is provided are allegations that Petitioner violated the terms of ATD release (Dkt. No. 5-4 at 3–4), allegations which Petitioner explains were due to a lack of communication by ICE about their expectations and which allegedly ended when Petitioner was informed how to comply (Dkt. No. 1 at 6).

Respondents rely on *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025), in support of ordering a post-deprivation hearing rather than granting release.  (Dkt. No. 4 at 7.)  The Court is not persuaded by this argument.  As in this case, the government in *Martinez Hernandez* alleged the petitioner had numerous ATD violations.  2025 WL 2495767, at *12.  The court was persuaded that if the government was correct about the ATD violations, "it [was] at least arguable that providing [Martinez Hernandez] with notice and a pre-deprivation hearing would have been impracticable

---

[1] Nor is there any evidence in the record indicating Respondents have provided Petitioner with any post-deprivation hearing.

and/or would have motivated his flight." *Id*. Because of this finding, the court found a "prompt, post-deprivation process" was appropriate. *Id*.

In the present matter, the facts do not reasonably support the conclusion that a pre-deprivation hearing would have been impracticable or that such a hearing would have motivated Petitioner to flee. In fact, Respondents offer no facts suggesting a pre-deprivation hearing was impracticable in this case nor any facts suggesting Petitioner was a flight risk. Instead, what is known is that Petitioner has been in removal proceedings, filed a timely asylum application which remains pending, and voluntarily appeared at his last check-in with Respondents as required. Petitioner also has no known criminal history and there is no allegation Petitioner was engaging in any unlawful conduct. In other words, Petitioner has much to lose by fleeing, which means it unlikely that the scheduling of a pre-deprivation hearing would have motivated Petitioner to flee. Altogether, Respondents' argument "entirely fails to show how Petitioner's circumstances constitute a special case that 'urgently require[s] arrest' such that providing notice and a pre-deprivation hearing would reasonably be considered 'impracticable[.]'" *Bravo-Zambrano v. Bondi*, NO. C26-0167JLR, 2026 WL 879245, at *4 (W.D. Wash. Mar. 31, 2026).

Petitioner has had no opportunity to be heard—either before or after his re-detention. All this poses a risk of erroneous deprivation. *See Doe*, 787 F. Supp. 3d at 1094 ("[G]iven that Petitioner was previously found not to be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."). Accordingly, the second *Mathews* factor favors Petitioner.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 10

3. <u>Government's interest</u>

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Admittedly, Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690. And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient. The Court acknowledges that the government has a strong interest in returning noncitizens to custody who violate conditions of release, but there is no indication that providing Petitioner with notice and an opportunity to be heard would have impaired this interest.

In sum, all three *Mathews* factors favor Petitioner. Respondents' detention of Petitioner violates the due process protections afforded to him by the Constitution. Petitioner has proven by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

**IV.    ORDER**

Accordingly, the Court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. No. 1) and ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **ONE (1) DAY** of

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 11

this Order.  Petitioner shall be returned to the conditions of release identified in his May 3, 2024 Order of Release.

2. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.

3. Within **TWENTY-FOUR (24) HOURS** of this Order, Respondents shall provide the Court with a declaration confirming Petitioner has been released from custody.

4. Petitioner seeks an award of fees.  (Dkt. No. 1 at 15.)  Petitioner is GRANTED leave to file a motion for attorney fees.  The motion for fees shall identify the legal authority supporting an award of fees and shall be filed no later than **September 8, 2026.** The Clerk is directed to calendar this event.

Dated this 8th day of June, 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 12